[Civil No. 1738.   Filed December 23, 1919.]

[185 Pac. 929.]

# D. O. JOHNSON, L. L. JOHNSON, F. TOOHEY and R. TOOHEY, Doing Business Under the Name and Style of TOOHEY & JOHNSON, a Copartnership, Appellants, v. COUNTY OF GILA, STATE OF ARIZONA, Appellee.

1. RAILROADS—FRANCHISE MAY RESERVE RIGHT TO CONSTRUCT CROSSINGS.—In view of Civil Code of 1913, paragraph 2189, the public retains the right to construct crossings over railroads when it grants a franchise to a railroad company.

2. HIGHWAYS—RIGHT TO CONSTRUCT CROSSINGS OVER RAILROAD NEED NOT BE OBTAINED.—A contractor on a county road cannot recover from the county damage for county's failure to acquire a right of way for the highway to be constructed over a railroad right of way though the railroad company interfered with the work, since, in view of Civil Code of 1913, paragraph 2189, the public retained such right whenever a franchise was granted to a railroad company.

3. HIGHWAYS—CONTRACTOR CANNOT RECOVER "ANTICIPATED PROFITS" OF COUNTY ON CHANGE OF PLANS.—Where a county in a contract for the construction of a road reserved the right to make changes in the form of the work, no allowance to be made the contractor for "anticipated profits," where the county changed the grades and cut down the amount of the work, and hence the cost of the work, the contractor was not entitled to any damages by reason of the reduction in the amount of the work, "anticipated profits" meaning the benefits or the gains that would have accrued to the contractor had the contract remained unchanged, or gains and benefits contractor would have been able to earn by performing additional work.

4. HIGHWAYS—CONTRACT ABROGATED BY SUBSTITUTION OF ANOTHER CONTRACT BY AGREEMENT.—A contract between a county and a contractor for the construction of eight miles of road was abrogated where after six miles had been constructed the county decided not to construct the remaining two miles under the original contract, but offered to permit the contractor to construct a temporary road the remaining two miles upon different specifications and on the cost plus basis; the contractor accepting the offer.

2. On the question of power to lay out street or highway across railway property or right of way, see note in 24 L. R. A. (N. S.) 1213.

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Affirmed.

### STATEMENT OF FACTS.

The appellant bid for and was awarded the contract to construct a portion of the Globe and Winkelman highway, known as the Winkelman-Christmas road. The section of road covered by the contract, as described in the contract, begins ''at the northerly limits of the city of Winkelman and running in a northeasterly direction toward and to the town of Christmas.'' The road is eight miles of construction.

The county adopted plans, specifications, maps, profiles, estimates, forms of contracts and detail information, and advertised for bids accordingly, referring persons who desired information for the purpose of preparing and offering bids to the proper office where such detailed information could be had and forms for proposals and contracts would be furnished them if desired.

The appellants called for and examined all of the proper documents, maps and information mentioned in the call, followed the suggestions contained in the information papers, and examined on the ground the roadway to be constructed, and from such information, documents, papers and examination on the ground bid for the privilege and contract for constructing the said section of road.

The bid was based on the approximate quantities shown and the unit prices entered in the itemized proposal or bid as required in the call. The appellants' bid was duly received and accepted by the board of supervisors, and a formal contract was executed by the parties on the twenty-seventh day of March, 1916.

The appellants commenced this action to recover from the county damages alleged to have occurred to them from the failure of the county to perform certain alleged duties owing to plaintiff, arising under the contract; and for profits on the work which would have been earned under the contract, but which were lost to plaintiffs because changes in the original contract diminished the amount of construction.

The defendant county demurred upon the grounds of insufficient facts stated and other alleged grounds, as will appear below in the opinion. The court sustained the demurrer, and the plaintiffs elected to stand on their amended complaint. Consequently, judgment was rendered for the defendant county. The plaintiffs appeal.

Messrs. Gust & Smith, for Appellants.

Mr. John W. Murphy, County Attorney and Mr. J. P. Dougherty, Deputy County Attorney, for Appellee.

CUNNINGHAM, C. J. (After Stating the Facts as Above.)—The working contract involved in this appeal is set forth at length in the complaint. The complaint is too voluminous to copy into this opinion. The plaintiffs seek to recover four separate claims as stated in the complaint.

First. The roadway to be constructed was located by the stakes on the ground and shown on the plans and maps to extend over the Arizona Eastern Railroad Company's right of way. That plaintiffs were informed that the county had acquired a right to construct the public road over such railroad right of way when their bid and proposal was made. So relying on such information, plaintiffs began the construction of said road in performance of the con-

tract, and encountered the objections of the said railroad company against proceeding when its right of way and premises were reached.

The complaint alleges:

"That said interference with said work of construction, and delays caused by the failure of said defendant to have obtained the right to construct said roadway over the said railroad right of way, continued to a greater or less extent until the completion of said construction, and that the plaintiffs sustained damages from the delays, disorganization of their methods of construction, and interference with the customary method of construction caused by the fact that the defendant had not obtained the right to construct said roadway over said railroad right of way, in the sum of . . . $2,500."

Second. The complaint alleges that the plans and specifications they examined and relied upon in making up the amount of their bid as to the price per unit called for a roadway sixteen feet wide, upon the line of location staked out on the ground. They allege:

"That the precise location of said roadway, the width thereof, and the quantity of the material to be excavated to the quantity of material to be used for filling were all material factors in determining the unit price which the plaintiffs bid for said work of construction in their said bid, and which were the prices fixed to be paid for said work in the aforesaid contract."

The further facts appear to the effect that two miles of the roadway were completed in strict conformity with the plans and specifications, and for the sole purpose of lessening the quantity of work to be done and paid for, the defendant "decided and determined to change the plans of construction of said roadway from a sixteen-foot roadway to a roadway twelve feet wide in the cuts and sixteen feet in the fills, and further decided and determined to raise the

grade of said roadway at various places and to change the location of said roadway at certain points, so as to lessen the quantity of material to be excavated, and through its said county engineer and his assistants immediately put said changes into effect.''

The plaintiffs protested to the county engineer and to the board of supervisors, objecting to the changes ordered, and the protests and objections were ''overruled, and the plaintiffs were directed to proceed with said work of construction according to said changed plans and grades, . . . and with the promise by the defendant that plaintiffs would be compensated for the loss sustained on account of such changes in the plan of construction, and that thereupon the plaintiffs proceeded with said work of construction according to said changes in width, grade and location, under protest. . . . That the narrowing of said roadway in the cuts, the changes of grade of said roadway at certain places and change in the location of said roadway at certain points, and the change in the relation of the quantity of material required to be excavated to the quantity of material to be used in fills greatly increased the cost of the construction of said roadway, and that the plaintiffs sustained damages, by such changes in the construction, in the sum of . . . $9,986.76.''

Third. The contract and plans called for approximately 221 cubic yards of class A concrete, and approximately 1,335 cubic yards of class C concrete as classified in said contract. The complaint alleges in this respect:

''That after approximately 35.58 cubic yards of class A concrete work and 235.3 cubic yards of class C concrete work had been constructed . . . the defendant . . . for the purpose of decreasing the cost of said roadway and of cheapening the construction·thereof, decided and determined to eliminate

from said contract all of the remainder of said concrete work. . . . ''

The plaintiffs objected to the changes and proceeded, under the same promise as referred to in the second count above, to the completion of the work of construction in conformity with the changes made, but under protest. The plaintiffs allege:

"That by the elimination of the concrete work aforesaid, the plaintiffs sustained damages in the sum of . . . $5,147."

The fourth count. The original proposition, bid and contract called for eight miles of roadway construction. The plaintiffs finished six miles of the work as called for in conformity with the original plans and specifications and with the changes of the said original plans and specifications. When the six-mile point was reached by the construction force, the defendant "decided and determined not to construct the two miles known as miles seven and eight of said roadway, being the two miles nearest the town of Christmas, and informed the plaintiffs that they would not be permitted to construct the said miles. . . . ''

The plaintiffs protested such change of the plans, "and were promised by said county engineer and said board of supervisors in open session that they would not be allowed to construct said miles seven and eight under the terms of the aforesaid contract, but that proper and adequate compensation would be made to them for the departure from the said contract."

Thereupon the parties agreed, and the plaintiffs performed the same, that is, a temporary roadway was constructed by plaintiffs from the said six-mile point to the town of Christmas, a distance of two miles, upon a basis of compensation of actual cost of labor and materials used and ten per centum thereof

added, "and that· said temporary roadway was constructed by plaintiffs under said new agreement."

The complaint alleges:

"That by reason of the foregoing elimination of said miles seven and eight from said contract caused the plaintiffs to sustain damages in the sum of . . . $1,189.90."

The thirteenth paragraph of the complaint follows, and is, to wit:

"That the plaintiffs have been paid by the defendant for the work actually done by them under the terms of the contract hereinbefore set forth at the prices stated in said contract, and have been paid by the defendant for the cost of constructing the temporary roadway between the end of mile six and the town of Christmas at the price agreed upon between the plaintiffs and the defendant after miles seven and eight had been eliminated from said contract, and the plaintiffs have been paid for certain extra work done on said roadway under the terms of said contract, but that the plaintiffs have been paid nothing whatever for damages sustained by them on account of departures from the contract hereinbefore set forth, or from the above-mentioned acts of the defendant in preventing the plaintiffs from constructing the said roadway according to the terms of said contract."

The complaint asserts that the plaintiffs have performed all the conditions of the contract required of them, except as set forth in paragraph 23 of the specifications included in the contract. Such paragraph requires that—

"If the contractor shall claim compensation for any damage sustained by reason of any act or omission by the county or any agent thereof, he shall, on or before the 15th day of the calendar month succeeding that in which such damage shall have been sustained, file with the board of supervisors a statement showing the nature of the damage sustained and the details and amount of such damage, and unless such statement shall be made as thus required,

his claim for compensation shall be forfeited and invalidated and he shall not be entitled to payment on account of any such damage, but the presentation of a claim for damage in accordance with the foregoing provisions shall not be deemed as evidence of any liability thereof by the county or said agent."

The plaintiffs aver that it was impossible for the plaintiffs to determine the amount of their damage sustained from said breaches of contract by the fifteenth day of the calendar month succeeding that in which the damage was sustained, and therefore such exception was unreasonable and invalid; that the said exception was inapplicable to plaintiffs' said claims for the further reasons that the boards of supervisors usually hold only one meeting before the 15th of each month, and such meeting was usually held on the first Monday of each month, and thus allowing plaintiffs only two or three days within which to compute the damages that might be sustained for any breach of contract committed by the defendant or its agent; that the defendant is estopped to rely upon the bar of the said provision, because in many alleged acts the county waived the provision.

The plaintiffs further allege that they made the usual demand for the payment of the foregoing items within six months after the same occurred, and the payment was refused. The prayer is for $18,823.66 as the aggregate sum of damages.

The first claim is without any foundation. The necessity to acquire a right of way for the public highway over a railroad right of way never existed. The public retained that right whenever the franchise was granted to the railroad company, and imposed on the railroad company the burden of constructing and maintaining "good and sufficient crossings, where its railroad crosses public roads, or town streets now or hereafter opened for public use.

. . . " Paragraph 2189, Rev. Stats. Ariz. 1913. If the contractors were delayed in the execution of their plans for the most profitable performance of their contract by interference of the railroad company at crossings, and such interference and delay resulted in loss to the contractors, the railroad company was the party in the wrong, and not the county.

Plaintiffs' second and third claims are based on a change of plans and specifications for the construction work by reducing the amounts of the units of work from the approximate amounts as estimated in the plans and specifications adopted and used as a basis for plaintiff's bids for the contract. The second claim sets forth changed plans, profile and alignment map for the purpose of "lessening the quantity of work to be done thereon . . . so as to lessen the quantity of material to be excavated."

The third claim is more specific, and sets forth that the plans and specifications with regard to cement were so changed that 186 cubic yards of class A cement work, and 1,099.7 cubic yards of class C cement work were eliminated from the contract.

Assuming that the changes in the plans referred to in the second claim amounted to a substantial "lessening of the quantity of material to be excavated," the question then arises—applicable to both the second and third claims—whether or not the contract permitted the county to make such changes, whether or not the subsequent conduct of the parties maintained the contractual relation as that relation otherwise existed under the contract, and other dependent questions.

In paragraph 4 of the specifications in the contract as set out on the face of the complaint, we find the following provision, to wit:

"The following is an estimate of the quantities of the work to be done and materials to be furnished: The quantities are to be considered as approximate

only, and the county engineer may increase or decrease them, as may be deemed necessary or expedient. The contractor shall not be entitled to any compensation for anticipated profits by reason of such change in quantities. Bids will be compared on the basis of these estimated quantities."

Paragraph 22 of said specifications provides as follows:

"22. *Changes.* The right is reserved by the board of supervisors to make such changes in the form or character of any of the work as may, at any time during the progress of the work, be recommended by the county engineer, provided, however, that in case such change increases the cost of the work, the contractor shall be remunerated at rates based on prices allowed on the same character of work under these specifications and shown by the unit costs in proposal; and in case it shall diminish the cost of the work no allowance will be made for the anticipated profits. Such changes shall in no wise invalidate the contract for the performance of the work nor the security therefor."

In paragraph 23, specifications, abstract of record, folio 105, page 35, the contractor stipulates, "and that he will make no claim against the county, by reason of any variation between the approximate quantities of the work done."

The changes made in the plans were material changes, reduced the quantity of work in a substantial amount, and prevented the plaintiffs from earning their anticipated profits on each unit of work eliminated from the plans and specifications. The purposes of the changes were to reduce substantially the amount of work to be done, and thereby prevent the plaintiffs from performing substantial quantities of units, and thus save to the county the cost of the work estimated. The clear stipulation of the contract quoted above is that, in case the changes shall diminish the cost of the work, no allowance will be made for the "anticipated profits." Clearly, "anti-

cipated profits,'' as used in this contract, means the benefits, the gains that would have accrued to the plaintiffs had the contract remained unchanged; the gains and benefits plaintiffs would have been able to earn by performing the additional work, the profits and gains on the work eliminated by the changes made; the profits plaintiffs expected to earn by the performance of the contract, but a portion of which they were prevented from earning by the changes eliminating a portion of the work theretofore included in the contract.

The sense of the stipulation would not be changed if the wording had been as follows:

"And in case it [the change] shall diminish the amount of the work, no allowance will be made for profits that plaintiffs would have earned by performing the work eliminated by the change."

Therefore, in the second and third claims the plaintiffs fail to show any facts entitling them to recover the losses, if any, occurring to them from the changes made in the contract. The claims made are clearly claims for "anticipated profits," and the parties stipulated that no allowance would be made for such cause.

The fourth claim sets forth that the county would not permit the plaintiffs to construct miles seven and eight as specified in the contract, "but that proper and adequate compensation would be made to them for the departure from the said contract; that thereafter the defendant proposed to plaintiffs that the plaintiffs construct another and a different roadway of a temporary nature from the end of mile six of the said original roadway to the town of Christmas, and that the plaintiffs finally entered into a new agreement with the defendant to construct such different and temporary roadway on the actual cost of labor and material used therein and ten per cent additional on the cost of the labor for supervision of the same;

and that the temporary roadway was constructed by plaintiffs under said new agreement.''

The plaintiffs thereupon set forth a claim to recover the profits they expected to earn had they been permitted to complete the two miles of roadway as specified in the original contract. The facts stated show clearly that as regards the said two miles of roadway, the new agreement and contract was substituted for the original contract—the original contract was changed by eliminating two miles of roadway construction. Under the ''anticipated profits'' clause plaintiffs waived their prospective profits for constructing said two miles. As compensation made to them for such departure from said original contract by eliminating therefrom such two miles, the plaintiffs were offered and they accepted the offer to construct the two miles of roadway upon a different plan and different specifications for compensation equaling actual cost and ten per cent thereon added.

The effect of substituting one contract for a prior contract dealing with the same subject matter between the same parties is to abrogate and extinguish the older contract. 13 C. J., § 628. The claim to recover profits that the plaintiffs expected to earn by constructing the said two miles of roadway in conformity with the terms and conditions of the original contract dissolved into vapors of memory, when the new contract was substituted for the old. Such facts fail to set forth a good cause of action.

The complaint alleges that every sum for which the county became liable to plaintiffs has been paid to them except as set forth in the four above-mentioned claims. I am of the opinion that the county is not liable for any of the said claims, for the reasons stated. The demurrers were properly sustained.

The judgment is affirmed.

ROSS and BAKER, JJ., concur.